# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | |
|---|---|
| Angela D. Terry, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:13-cv-01674-JAR |
| v. ) | |
| ) | |
| Legal Asset Financial Group, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

In conjunction with Plaintiff's hearing on damages, Plaintiff respectfully asks the Court to consider the following cases in determine the appropriate damages to award as a result of Plaintiff's suffering of emotional distress:

In *Clodfelter v. United Processing, Inc.*, 2008 WL 4225557 (C.D. Ill. 2008), the plaintiff had borrowed $400 from the Money Place in Mattoon, IL for his personal use. Several years later, the plaintiff started receiving telephone calls from the defendant's employees claiming he still owed money on the debt. *Id*. at *1. The plaintiff advised the defendant's employee that the debt had already been paid, but the employee insisted the plaintiff still owed $600.00. *Id*. at *1. When the plaintiff stated he did not intend to pay any more money, one of the employees told him "your attitude sucks" and threatened him with criminal prosecution. *Id*. at *1. When the plaintiff called the employee back, the employee said "she was on the other telephone line with the Coles County State's Attorney discussing Plaintiff's case," and that the plaintiff should "expect a knock at his door." *Id*. at *1. The plaintiff subsequently filed suit under the Fair Debt Collection Practices Act ("FDCPA") alleging (1) the defendant misrepresented he would be

criminally prosecuted; (2) the defendant contacted numerous third parties in an attempt to collect the debt; and (3) the defendant attempted to collect a debt Plaintiff did not owe. *Id*. at *2.

The defendant failed to respond to the complaint and a default judgment was entered. *Id*. at *2. The plaintiff subsequently filed an affidavit in support of his request for damages, and averred: (1) "[e]ven though [he] called the State's Attorney, [he] was still worried that [he] might be arrested for this debt. The thought of sitting in jail with criminals made [him] sick;" (2) "[t]he telephone calls also put a strain on [his] family. [His] mom was worried that [he] might be arrested over these telephone calls. It also was embarrassing for [him] because now [his] family knew that [he] once had trouble paying a debt;" and (3) [he is] also embarrassed that people in the community may think that [he is] a criminal about to be prosecuted. [He] believe[d] that word spread about the telephone call throughout the R.R. Donnelley plant and [he] live[s] in a small town." *Id*. at *3. The plaintiff requested an award of $1,000.000.00 in actual damages under the FDCPA.[1]

In awarding $100,000.00 to the plaintiff in actual damages, the court noted that allegations of emotional distress alone were sufficient to justify such an award. *Id*. at *4. The court noted that the plaintiff could not rely on merely conclusory allegations to justify an award of damages based on emotional distress; however, the court found that the defendant's conduct in contacting the plaintiff's family members and co-workers, and threating criminal prosecution and arrest overcame this burden. *Id*. at *5.

---

[1] The plaintiff also requested damages under Illinois state law, but the Court awarded damages separately under the FDCPA claim.

2

Similarly, in *Morisaki v. Davenport, Allen & Malone, Inc.*, 2010 WL 3341566 (E.D. Cal. 2010), the plaintiff alleged the defendant debt collector (1) contacted her ex-husband about the plaintiff's debt; (2) said it intended to sue the plaintiff by the end of the week if the debt was not paid; (3) used abusive, harassing, and profane language when speaking to the plaintiff on the telephone; (4) failed or refused to identify itself by providing the individual debt collector's name or the name of the debt collection company; (5) threatened to make false and negative reports to consumer reporting agencies and thereby to detrimentally affect the plaintiff's credit score; and (6) attempted to deceive the plaintiff's ex-husband into providing information about the plaintiff by threatening legal proceedings if the plaintiff's debt was not paid immediately. *Id*. at *2.

The plaintiff sought a default judgment against the defendant after it failed to respond to the complaint. In support of her motion for a default judgment, the plaintiff submitted an affidavit making the following statements:

> "[The plaintiff] sought legal counsel in January 2009 because she was being harassed by defendant, whose agents had contacted her several times and were abusive, threatened litigation, and threatened to ruin her credit. They had also contacted her ex-husband, disclosed to him that she owed a debt, and told him they would be filing a lawsuit against her. The first such contact was in early December of 2008. The caller was rude and abusive and told plaintiff that she owed Delta ADT $800.00 and had to pay or they would take her to court. Plaintiff told the caller that she did not owe anything to ADT, that she had cancelled the service in March or April of 2008 because she had moved and was told that ADT could not transfer the service. Plaintiff asked the caller for verification of the alleged debt, but she never received a validation letter to verify the origin of the debt, despite numerous requests for such validation. Next, defendant began faxing letters to plaintiff at her place of employment and calling her there. She requested that they stop contacting her at work by phone and fax. Then defendant contacted plaintiff's ex-husband. Next, defendant contacted plaintiff's employer by fax, asked how much she was paid and advised the employer that they were filing a lien against her income to collect on a debt. Without validation of the debt, plaintiff continued to refuse to pay it and was continually harassed. She disputed the debt, told defendant she did not owe anything, and asked them to stop calling her. Defendant started calling her co-workers and sometimes called plaintiff three

3

times a day. Defendant told one of plaintiff's co-workers that plaintiff was a bad employee and owed them money, provided details, and then asked the coworker to tell plaintiff's boss that plaintiff should not be trusted or employed by good people. This created a great deal of humiliation for plaintiff at work and interfered with her work relationships. Defendant called plaintiff repeatedly at home and yelled so loudly over the phone that she owed them money and that they were going to sue her that plaintiff's children could hear the threats and were upset and asked plaintiff if she was going to be sued and if it meant they would have to move."

*Id*. at *4.

Based on the above facts, the court awarded damages to the plaintiff in the amount of $73,000.00, plus $1,000.00 in statutory damages.[2]

Plaintiff avers that the facts in the instant case are remarkably similar to those in *Clodfelter* and Thus, Plaintiff believes an award of actual damages in the instant case should be in line with these other cases.

Finally, Plaintiff notes that this Court recently held that under the FDCPA, a claim for actual damages can be supported by a showing of emotional distress. *Ploch v. FirstSource Advantage LLC*, 2012 WL 5384876 (E.D. Mo. 2012). "A consumer who has suffered emotional distress has suffered "actual damage" under the FDCPA, even if the emotional distress was not severe." *Id*. at *4. Moreover, "a plaintiff's testimony, standing alone, can provide sufficient evidence to support a claim for emotional-distress damages, provided the plaintiff can reasonably explain the circumstances of the injury and not rely merely on conclusory statements." Id. at *4. Having clearly satisfied this standard, Plaintiff should be entitled to an award of actual damages, based on her testimony before this Court, in the amount of $100,000.00.

---

[2] The court's award of actual damages was made pursuant to both federal and state law. However, the court did not indicate whether it was dividing the damages between the federal and state claims, or whether the damages were being awarded "jointly and severally" under both statutes.

Respectfully submitted:

/s/ Mitchell B. Stoddard
Mitchell B. Stoddard, #38311MO
Consumer Law Advocates
11330 Olive Boulevard, Suite 222
St. Louis, Missouri 63141
(314) 692-2001 *tel*
(314) 692-2002 *fax*
mbs@clalaw.com

Attorneys for Plaintiff

5