UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA D. TERRY, | ) |
| Plaintiff, | ) No. 4:13-CV-1674-JAR |
| v. | ) |
| LEGAL ASSET FINANCIAL GROUP, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Angela Terry's motion for default judgment against Defendant Legal Asset Financial Group, LLC ("Legal Asset") for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA"). (Doc. No. 5) The summons and complaint were served on Legal Asset on September 18, 2013. Legal Asset did not file an answer or other responsive pleading and, on December 3, 2013, the Clerk of Court entered default against Legal Asset. The Court held a hearing on damages on January 7, 2014.

**Background**

According to the complaint, Plaintiff defaulted on a signature loan in 2007. The loan was assigned to Greater California Financial Services for collection and suit was filed in the Circuit Court of Jefferson County on March 10, 2011. On November 10, 2011, the suit was settled and dismissed with prejudice.

In March 2013, "Michael King" called Plaintiff's place of employment and left a message for her with the receptionist stating he was a "process server." When Plaintiff returned King's call, he told her that she was being sued for $20,000. King did not disclose that he was a

collection agent for Legal Asset. Plaintiff told King the matter had been resolved, but King responded that she could be served at work or home, which ever she preferred. Plaintiff told King to serve her wherever he wanted. Plaintiff did not hear back from King.

In July 2013, "Scott Sellers" called Plaintiff at her place of employment and left a message that he was a process server and needed to speak with Plaintiff. Plaintiff's supervisor called Plaintiff at home and gave her Seller's number. When Plaintiff returned the call, the person answering the phone stated "corporate office" and did not disclose the fact that Plaintiff had reached Legal Asset's office.

Plaintiff was transferred to "Robert Duke." Duke did not disclose that he worked for Legal Asset. Duke told Plaintiff he intended to have her served at her place of employment. Plaintiff told Duke to go ahead and serve her and hung up the phone. Duke immediately called Plaintiff back and told her she was a "loser who didn't pay her bills" and "skate[d] through life without paying for things." Duke also told Plaintiff he had access to her credit report, reading trade-line items from the report out loud over the telephone, and accused her of making "terroristic threats." Plaintiff handed the phone to her boyfriend, Terry Mattingly. Duke told Mattingly that Legal Asset was willing to settle the account for $1,000. Mattingly then hung up the phone.

On July 27, 2013, Plaintiff called Duke to find out who he worked for. Duke would not disclose that he worked for Legal Asset. Duke refused to provide Plaintiff with a written communication setting out the amount of her debt, telling her she would first have to make a payment before he would provide her with contact information. Duke told Plaintiff he was the "head lawyer" and that she now had to pay $2,000 to settle the matter. He called her an "ignorant child," read aloud again from her credit report, and told her he intended to get a judgment against

her. Plaintiff hung up the phone. Duke called back a few minutes later and told Plaintiff it was "a felony offense to make terrorist threats," and that he was going to "press charges" against her boyfriend.

On August 1, 2013, Plaintiff called and spoke with "William White," who told her he was the "head lawyer" and Duke's boss. Plaintiff told White she would send a payment if he provided her with written information stating the amount she owed. White emailed Plaintiff a communication from Legal Asset titled "Settlement Agreement" indicating that Legal Asset would settle the matter for $2,000. (Doc. No. 1-4)

On August 26, 2013, Plaintiff filed a complaint against Legal Asset for violation of the FDCPA (Count I) and intentional infliction of emotional distress (Count II). She seeks actual and punitive damages, statutory damages, and attorney's fees.

In Count I, Plaintiff alleges Legal Asset committed the following acts in violation of the FDCPA:

> a. Legal Asset's agents, Michael King and Scott Sellers, falsely told Plaintiff they were process servers in order to make Plaintiff believe that a lawsuit had already been filed against her, even though Legal Asset had no intention of filing a lawsuit, in violation of 15 U.S.C. §§ 1692e(5) and (10);
>
> b. Legal Asset violated 15 U.S.C. § 1692e(2)(A) by attempting to collect money that Plaintiff did not owe, in that Greater California Financial Services had already sued Plaintiff on the same debt and had dismissed the lawsuit with prejudice;
>
> c. Legal Asset's agents, Robert Duke and William White, falsely told Plaintiff they were lawyers, in violation of 15 U.S.C. § 1692e(3);
>
> d. Legal Asset's agent, Robert Duke, violated 15 U.S.C. § 1692d(2) by calling Plaintiff a "loser who didn't pay her bills," and an "ignorant child," and by telling Plaintiff she "skates through life without paying for things;"
>
> e. Legal Asset's agents each violated 15 U.S.C. § 1692d(6) by calling Plaintiff over the telephone without providing any meaningful disclosure of their identity;

f. Legal Asset's agents, Michael King and Scott Sellers, violated 15 U.S.C. § 1692c(b) by communicating with third parties at Plaintiff's place of employment and disclosing they were "process servers;"

g. Legal Asset's agent, Robert Duke, violated 15 U.S.C. § 1692e(5) by threatening to serve Plaintiff with a lawsuit at her place of employment, in that Legal Asset had no legal right to serve Plaintiff, and/or Legal Asset never intended to serve Plaintiff;

h. Legal Asset's agents, Robert Duke and William White, violated 15 U.S.C. §§ 1692d and 1692e(16) by reading items from Plaintiff's credit report to Plaintiff out loud over the telephone, thereby attempting to intimidate Plaintiff by letting her know they had access to her credit report information;

i. Legal Asset's agent, Robert Duke, violated 15 U.S.C. § 1692e(7) by accusing Plaintiff of making "terroristic threats," and by telling Plaintiff it was a "felony offense to make terroristic threats" and that he "planned to press charges" against Plaintiff's boyfriend.

Plaintiff alleges that as a result of these actions, she suffered anxiety, stress, inconvenience, embarrassment, humiliation, loss of sleep, loss of appetite, nausea and emotional distress. She seeks statutory damages, costs and reasonable attorney's fees pursuant to § 1692k, and actual damages in excess of $100,000.

In Count II, Plaintiff alleges Legal Asset intended to inflict emotional distress when it engaged in the conduct that forms the basis of her FDCPA claim. In addition to actual damages in excess of $100,000, Plaintiff seeks an award of punitive damages in an amount that will fairly and reasonably punish Legal Asset for its conduct.

**Discussion**

In considering a motion for default judgment, the Court is mindful that, by defaulting, defendant is deemed to have admitted for purposes of this action all well-pleaded factual allegations in the complaint. <u>Rankins v. National Credit Works II, LLC</u>, 2011 WL 5222601, at *1 (E.D. Mo. Nov. 2, 2011) (citing <u>Taylor v. City of Ballwin</u>, 859 F.2d 1330, 1333 (8th Cir. 1988)). The Court accepts Plaintiff's allegations as true, except for those relating to the amount

of damages, see Sojka v. Takhar Collection Services, Ltd., 2013 WL 466287, at *2 (E.D.Mo. Feb. 7, 2013), and finds Plaintiff is entitled to default judgment.

**Count I – violation of the FDCPA**

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." § 1692(a). Debt collectors are liable for failure to comply with "any provision" of the Act. § 1692k(a). The FDCPA prohibits a debt collector from engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," § 1692d; using "any false, deceptive, or misleading representation or means," §1692e; and using "unfair or unconscionable means" to collect any debt, § 1692f. In determining whether a debt-collection communication was false, deceptive, misleading, unfair, or unconscionable, the communication must be viewed through the eyes of an unsophisticated consumer. Rankins, 2011 WL 5222601, at *1 (citing Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317–18 (8th Cir.2004); Peters v. General Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir.2002)).

A debt collector who fails to comply with any provision of the FDCPA is liable for "actual damages sustained by such person," "such additional damages as the court may allow, but not exceeding $1,000," and, in a successful action to enforce the FDCPA, "the costs of the action, together with a reasonable attorney's fee as determined by the court." § 1692k(a)(1)-(3). In determining the amount of liability, the Court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

With respect to damages, Plaintiff testified that as a result of Legal Asset's actions, she was a "wreck," worried that Legal Asset's agents had access to her credit report, embarrassed at

work, and stressed by the phone calls she received. Plaintiff's boyfriend, Terry Mattingly also testified that Plaintiff was very upset at the way she was treated and often reduced to tears.

The Court recognizes that a consumer who has suffered emotional distress has suffered "actual damage," even if the emotional distress was not severe. Ploch v. FirstSource Advantage LLC, 2012 WL 5384876, at *4 (E.D.Mo. Nov. 1, 2012) (citing Edeh v. Midland Credit Management, Inc., 748 F.Supp.2d 1030, 1041 (D.Minn.2010)). However, the Court finds Plaintiff's requested actual damages of $100,000 excessive in light of the factors stated in §1692k(b)(1) as applied by other courts. See Missey v. Watson Acquisition Group, LLC, 2011 WL 864901, at *1-2 (E.D. Mo. Mar. 10, 2011) (awarding plaintiff $2,000 in actual damages for mental anguish as a result of conduct similar to that alleged here); Jenkins v. Eastern Asset Management, LLC, 2009 WL 2488029 (E.D. Mo. Aug. 12, 2009) (awarding $2,000 actual damages for mental anguish and humiliation as a result of phone call threatening suit and garnishment); Chiverton v. Federal Fin. Group, Inc., 399 F.Supp.2d 96, 102 (D.Conn.2005) (awarding $5,000.00 in actual damages for consumer's emotional distress resulting from debt collector's repeated telephone calls to consumer's workplace and supervisor, despite consumer's request that they stop, which lead consumer to fear for his job and possible promotion). Based on the facts set forth in the complaint and Plaintiff's testimony, the Court will award Plaintiff $1,000 in statutory damages and $10,000 in actual damages.

The FDCPA also provides for attorney's fees and costs. § 1692k(a)(3). According to the documentation provided to the Court, Plaintiff has incurred $2,880 in attorney's fees in pursuit of this action. Upon review, the Court finds the number of hours expended by counsel (9.6) and the hourly rate ($300) reasonable. Thus, the Court will award Plaintiff $2,880 in attorney's fees.

**Count II – intentional infliction of emotional distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must plead facts sufficient to establish that defendant's conduct was "extreme and outrageous," that defendant "acted intentionally or recklessly," and that defendant's conduct caused plaintiff "extreme emotional distress." Kansas City Laser, Inc. v. MCI Telecommunications Corp., 2007 WL 3097004, at *3 (8th Cir. 2007) (quoting Hendrix v. Wainwright Indus., 755 S.W.2d 411, 412 (Mo.Ct.App.1988)). The alleged emotional distress must be "medically diagnosable and medically significant." Id. Additionally, the plaintiff must plead facts sufficient to establish that the defendant's "sole intent in acting was to cause emotional distress." Id. (quoting Cent. Mo. Elec. Coop. v. Balke, 119 S.W.3d 627, 636 (Mo.Ct.App. 2003)). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (quoting May v. Greater Kan. City Dental Soc'y, 863 S.W.2d 941, 948 (Mo.Ct.App.1993)).

The Court finds the allegations in Plaintiff's complaint are sufficient to show that Legal Asset's collection tactics went beyond the bounds of decency. Calling Plaintiff at her place of employment and threatening to serve her with a lawsuit for non-payment of an already-satisfied debt, accusing her of a felony offense, and calling her rude and insulting names was reckless and intentional and caused Plaintiff to suffer anxiety, concern and mental anguish. Similar conduct has been found extreme and outrageous. See, e.g., Rivera v. Corporate Receivables, Inc., 2006 WL 2992738 (D.Conn. Oct. 20, 2006) (holding that calling plaintiff multiple times each day and threatening her with imprisonment in an attempt to collect a debt she disputed could rise to the level of extreme and outrageous conduct); Longo v. Waterbury Hosp. Health Center, 2005 WL 407785 (Conn.Super. Jan. 14, 2005) (holding that plaintiff's intentional infliction of emotional distress claim premised on a hospital's collection tactics, which included numerous telephone

calls and threats to plaintiff, could survive hospital's motion to strike); <u>McHugh v. Check Investors, Inc.</u>, 2003 WL 21283288 (W.D.Va. May 21, 2003) (holding that threatening to arrest and imprison a plaintiff for nonpayment of an already-satisfied debt was clearly intended to cause plaintiff severe emotional distress). Given Legal Asset's conduct, including its threats of criminal prosecution against Plaintiff and her boyfriend, the Court will award Plaintiff $10,000 in actual damages and $10,000 in punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Angela Terry's motion for default judgment against Defendant Legal Asset Financial Group, LLC [5] is **GRANTED**.

**IT IS FURTHER ORDERED** that on Count I, violation of the FDCPA, Plaintiff Angela Terry is awarded statutory damages in the amount of $1,000, actual damages in the amount of $10,000, and attorney's fees in the amount of $2,880, against Defendant Legal Asset Financial Group, Inc.

**IT IS FURTHER ORDERED** that on Count II, intentional infliction of emotional distress, Plaintiff Angela Terry is awarded actual damages in the amount of $10,000, and punitive damages in the amount of $10,000, against Defendant Legal Asset Financial Group, LLC.

An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk's Office is directed to mail a copy of this Memorandum and Order and accompanying Default Judgment to Defendant Legal Asset Financial Group, LLC, to the address at which this Defendant was served, 495 E. Rincon St. #125, Corona, CA 92879.

                                        _____
                                        **JOHN A. ROSS**
                                        **UNITED STATES DISTRICT JUDGE**

Dated this 7th day of February, 2014.